# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CYNTHIA BLEVINS-BRYANT, | : | |
| Plaintiff, | : | Case No. 3:14cv00237 |
| vs. | : | District Judge Thomas M. Rose |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | : | Chief Magistrate Judge Sharon L. Ovington |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I. Introduction

Plaintiff Cynthia Blevins-Bryant brings this case challenging the Social Security Administration's denial of her application for Disability Insurance Benefits (DIB). She asserts here, as she did before the administration, that she has been under a benefits-qualifying disability – starting on August 14, 2009 – due to manic depressive disorder, post traumatic stress disorder, anxiety, and migraines. (*PageID##* 65, 179-80, 210).

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #13), Plaintiff's Reply (Doc. #14), the administrative record (Doc. #6), and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

## II. Background

### A. Plaintiff's Testimony

At all relevant times, Plaintiff has been under 50 years old, placing her in the category of a "younger person" for purposes of resolving her claim for DIB. *See* 20 C.F.R. § 404.1563(c). She has at least a high school education. Her past relevant employment includes jobs as a licensed practical nurse (LPN), hairdresser, and dispatcher.

At her administrative hearing in January 2013, Plaintiff testified she is 5' 3" tall and weighs 270 pounds. (*PageID#* 68). She last worked in 2010 as a LPN, but only for 3 to 6 weeks. Plaintiff stated, "my body wouldn't allow me to stay there. . . ." (*PageID#* 69). Previously, Plaintiff worked for an alarm company as a customer service representative. She monitored customers' alarms and dispatched police and fire departments when needed. She left that job when the company went out of business.

Plaintiff believed her most significant physical impairment to be her migraine headaches because, "of how it is and how it affects the left side of my body." (*PageID#* 71). For example, Plaintiff explained that "when the migraine comes on, I'll have pain on the left side of my head and it'll tighten up and that'll last for a few minutes and it'll come out into the left side of my body like numbness, tingling and tightening . . . ." (*PageID#* 71). Plaintiff indicated she is prescribed Topamax to help ease the pain in her head, but noted, it has not helped with the left side symptoms that occur on a daily basis. She still has migraines that require her to lay down and rest about 2 days each week.

Plaintiff testified her mother comes to her house on days she is having migraines

and helps with laundry, washing dishes, making beds, and caring for her two minor children.

Plaintiff also suffers from depression, and cries a lot.  She indicated she has hallucinations, such as seeing shadows, bugs, and people with guns behind trees outside.  Although she has a driver's license, Plaintiff indicated that some days she does not drive because she has problems with traffic: "it's like the people in their cars are talking to me." (*PageID#* 77).  On bad days, Plaintiff worries, cries, and stays in bed.  (*PageID#* 79).  During a month, she estimates she stays in bed a couple weeks, "not like consecutive weeks.  It's maybe like a week here or three days here." (*Id.*).  In contrast, on a good day, she is able to get her kids ready for school, do chores, and enjoy hobbies such as singing in her church choir.  Regardless of having a good day or bad day, Plaintiff indicated she may have a migraine and need to "try to make the headache go away." (*PageID#* 80).

## B. **Medical Evidence**

The administrative record contains many medical records plus opinions from Plaintiff's medical sources.  A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel summarized the relevant records concerning Plaintiff's physical and mental impairments with citations to specific evidence.  The Commissioner likewise defers to the ALJ's factual recitation.

## III. **"Disability" Defined and the ALJ's Decision**

The Social Security Administration provides Disability Insurance Benefits (DIB) to

individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D). The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – *i.e.,* "substantial gainful activity," in Social Security lexicon.[2]  42 U.S.C. § 423(d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

To determine whether Plaintiff was under a benefits-qualifying disability, Administrative Law Judge (ALJ) Irma J. Flottman applied the Social Security Administration's 5-Step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)(4). Steps 2, 3, and 4 are the most significant in this case.

At Step 2, the ALJ concluded that Plaintiff had several impairments, namely, "obesity; hypertension; mild lumbar spondylosis; mild left-sided carpal tunnel syndrome; affective disorder (bipolar disorder and major depressive disorder); and anxiety disorder (20 CFR 404.1520(c))." (*PageID#* 45).

At Step 3, the ALJ concluded that Plaintiff's impairments or combination of impairments did not meet or equal the criteria in the Commissioner's Listing of Impairments, including sections 1.04, 4.00, 12.04 and 12.06. (*PageID##* 47-49).

At Step 4, the ALJ concluded that Plaintiff retained the residual functional

---

[2] In addition, the impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

capacity[3]:

> to perform medium work as defined in 20 CFR 404.1567(c) with the following limitations: lifting no more than 50 pounds occasionally and 25 pounds frequently (the claimant is right hand dominant); stand and/or walk for about six hours and sit up for up to six hours in an eight-hour workday, with normal breaks; occasionally stoop and climb ladders, ropes, or scaffolds; frequently crouch and crawl; perform handling (gross manipulation) and finger (fine manipulation) with the left hand on a frequent basis; only occasional changes in work setting; and no strict production quotas or fast pace work.

(*PageID##* 48-54).  The ALJ also concluded at Step 4 that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms.  However, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment . . . ."  (*PageID#* 49).

The sum and substance of the ALJ's sequential evaluation ultimately led him to conclude that Plaintiff was not under a benefits-qualifying disability.

## IV.    Judicial Review

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or

---

[3] A social-security claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. § 404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . " *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**V. Discussion**

**1.**

Plaintiff first argues the ALJ erred by failing to adequately consider her migraines

as an impairment throughout the disability analysis. (Doc. #10, *PageID##* 728-730). The ALJ determined Plaintiff's migraines to be a non-severe impairment, finding as follows:

> The claimant also alleged disability due to migraine headaches, but a CT scan of the brain on November 20, 2010, showed no abnormalities (Exhibit B9F, page 6). An MRI of the brain on July 19, 2011, showed nonspecific white matter findings, and the interpreting physician stated that differential diagnoses could include migraines (Exhibit B18F, page 3). However, the record otherwise contains no documentation of emergency room visits or objective diagnostic studies to confirm the severity and frequency of the headaches she asserts.

(*PageID*#45). Although the ALJ did not consider Plaintiff's migraines as a severe impairment at Step 2, such a finding is legally irrelevant as the ALJ determined Plaintiff had other severe impairments, namely obesity, hypertension, mild lumbar spondylosis, mild left-sided carpal tunnel syndrome, affective disorder (bipolar disorder and major depressive disorder), and anxiety disorder. (*PageID#* 45). Thus, Plaintiff cleared Step 2. *See Simpson v. Comm'r of Soc. Sec.*, 344 Fed. App'x. 181, 190-91 (6th Cir. 2009) ("This Court has previously found it 'legally irrelevant' that some of a claimant's impairments were considered non-severe, when others were found to be severe, because a finding of severity as to even one impairment clears the claimant of step two of the analysis and should cause the ALJ to consider both the severe and nonsevere impairments in the remaining steps.")(internal citations omitted).

Plaintiff argues that even if the ALJ did not err by identifying her migraines as a non-severe impairment, however, the ALJ "still erred in failing to consider those migraines throughout the disability evaluation process and substantively consider the limitations occasioned thereby." (Doc. #10, *PageID#* 729).

The Commissioner contends the ALJ properly considered Plaintiff's migraines throughout her analysis. (Doc. #13, *PageID##* 741-42). The Commissioner argues the emergency room treatment she received was not for a primary complaint of headache pain, but for a "generalized issue of left-side numbness and tingling she had been experiencing for the previous three days. . . ." (*Id.*).[4] The Commissioner also contends the CT scan and brain MRI Plaintiff underwent did not provide objective evidence supporting her complaints of migraines. (*Id.*).

Although the ALJ did not completely overlook Plaintiff's migraine headaches in this case, the few findings she made regarding Plaintiff's migraines are not supported by substantial evidence. For example, the ALJ concluded "the record . . . contains no documentation of emergency room visits or objective diagnostic studies to confirm the severity and frequency of the headaches she asserts," *PageID#* 46-47, yet the record indicates Plaintiff sought emergency medical treatment on at least two occasions and was complaining of migraine-related symptoms. (*PageID##* 359-68, 408-14).

Moreover, while the Commissioner argues the objective evidence does not support Plaintiff's complaints regarding her migraine headaches, such an argument misses the mark. Although it may seem like a fine distinction, it is important to note that it is not the physical changes in the brain that occur during a migraine that Plaintiff claims are disabling, but the resulting pain. Thus, while medical imaging may be able to capture

---

[4] As Plaintiff's testimony clearly indicates, however, this is one of the symptoms that occurs when she has a migraine. (*PageID#* 71)("when the migraine comes on . . . it'll come out into the left side of my body like numbness, tinging and tightening . . . .").

8

physical changes or abnormalities in the brain tending to support an individual's complaints of migraine-related pain, it does not conversely follow that the absence of such evidence undermines such complaints. As the Court of Appeals for the Seventh Circuit aptly noted, "[m]edical science confirms that pain can be severe and disabling even in the absence of 'objective' medical findings, that is, test results that demonstrate a physical condition that normally causes pain of the severity claimed by the applicant." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). In addition, as to migraine pain generally, the National Institute of Health's National Institute of Neurological Disorders and Strokes explains:

> The pain of a Migraine headache is often described as an intense pulsing or throbbing pain in one area of the head . . . . [T]he International Headache Society diagnoses a migraine by its pain and number of attacks (at least 5, lasting 4-72 hours if untreated), and additional symptoms include nausea and/or vomiting, or sensitivity to both light and sound . . . . Migraine is three times more common in women than in men and effects 10 percent of people worldwide . . . . People with migraine tend to have recurring attacks triggered by a number of different factors, including stress, anxiety, hormonal changes, bright or flashing lights, lack of food or sleep, and dietary substances . . . .
>
> There is no absolute cure for migraine since its pathophysiology has yet to be fully understood . . . .

http://www.ninds.nih.gov/disorders/migraine; *see* The Merck Manual at 1376 (17th Ed. 1999). Accordingly, not only did the ALJ err by incorrectly finding the record lacked evidence of emergency room visits, but she also erred by relying on the lack of objective evidence of Plaintiff's migraines to assess the severity and frequency of headaches.

Finally, even if these findings were supported by substantial evidence, the ALJ also

9

erred by failing to properly and substantively consider Plaintiff's migraines throughout the remaining steps of her sequential analysis. The Commissioner argues to the contrary, but only refers to form language after Step 2. (Doc. #13, *PageID#* 744)(citing *PageID##* 44, 47, 49). Such language, however, does not indicate the ALJ actually considered Plaintiff's migraines at Step 4 as required by law. *See Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003)("[O]nce the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps.")(citation omitted).

For these reasons, Plaintiff's Statement of Errors is well taken.

## 2.

Plaintiff also contends the ALJ erred by failing to incorporate limitations – without explanation – from examining state agency psychological consultant Dr. Bonds's opinion regarding Plaintiff's functional limitations. (Doc. #10, *PageID##* 728-730). The ALJ indicates the ALJ provided "significant weight" to Dr. Bonds's opinion as it was "supported by objective signs and findings upon examination and in the preponderance of the medical record, including those records submitted after their assessments," but only identifies two mental health limitations: (1) "only occasional changes in work setting; and (2) "no strict production quotas or fast pace work." (*PageID#* 49).

The Commissioner contends the ALJ properly considered Dr. Bonds's evaluation. (Doc. #13, *PageID#* 744). The Commissioner finds Plaintiff's argument, "perplexing, given [the ALJ] did indeed accommodate [Plaintiff's] attention, concentration, and stress-

related limitations by restricting her to no strict production quotas, no fast pace work, and only occasional changes in the workplace, and specifically explained that these RFC restrictions 'adequately account[] for [Plaintiff's] moderate impairment in concentration, persistence, and pace." (Doc. #13, *PageID#* 745).

As set forth in Dr. Bonds's opinion, she found, in part, that Plaintiff "easily becomes stress[ed] and overwhelmed and she will have to leave the job early when this happens." (*PageID#* 437). Dr. Bonds also opined "[w]ork pressures increase [Plaintiff's] symptoms of anxiety causing panic attacks and increase depressed moods. In response to the stress she often has to leave work early or she misses work. [Plaintiff] may perform best in a low stress job where there are fewer demands." (*PageID##* 437-38).

The two mental health limitations included by the ALJ do not require a low-stress environment nor otherwise adequately address Dr. Bonds's opinion pertaining to Plaintiff's problems arising from stress. Social Security Regulations, as explained in Ruling 96-6p, mandate ALJs to explain the weight given to the opinions of state-agency medical sources, such as Dr. Bonds:

> [T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence . . ., the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other facts that could have a bearing on the weight to which and opinion is entitled, including any specialization of the State agency medical or psychological consultant.

11

Social Security Ruling 96-6p, 1996 WL374180 at *2.  Similar rules apply during an ALJ's assessment of residual functional capacity:

> Although the administrative law judge . . . is responsible for assessing an individual's RFC . . . , the administrative law judge . . . must consider and evaluate any assessment of the individual's RFC by State agency medical or psychological consultant and by other program physicians or psychologists are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s).  Again, they are to be evaluated considering all the factors set out in the regulations for considering opinion evidence.

*Id.*, 1996 WL 374180 at *4.

Here, the ALJ did not indicate why she only incorporated some of the limitations set forth by Dr. Bonds, but not others.  As such, Plaintiff's challenge to the ALJ's assessment of her mental residual functional capacity is also well taken.

## VI.     Remand is Warranted

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right.  *Bowen*, 478 F3d at 746.  Remand warranted by an ALJ's failure to follow the regulations arises, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-47 (6th Cir. 2004); failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific

reasons supported by substantial evidence for finding the plaintiff to lack credibility, *Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky*, 35 F.3d at 1041. The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is weak. *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant to sentence four of §405(g) due to problems set forth above. On remand, the ALJ should be directed to: (1) re-evaluate the record under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) determine anew whether Plaintiff was under a disability and thus eligible for DIB.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Cynthia Blevins-Bryant was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.


July 23, 2015

                s/Sharon L. Ovington
                Sharon L. Ovington
             Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474  U.S. 140 (1985);  *United States v. Walters*, 638 F. 2d 947, 949-50 (6th Cir. 1981).